UNITED STATES  DISTRICT COURT

Northern District of California

IRMA RAMIREZ, et al.,

                Plaintiffs,

   v.

SAM'S FOR PLAY CAFÉ, et al.,

                Defendants.

_____/

No.   C 11-1370 MEJ

**ORDER RE: PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**(Docket No. 32)**

**INTRODUCTION**

On March 22, 2011, Irma Ramirez and Daren Heatherly ("Plaintiffs") filed this action against the owners of Sam's For Play Café ("Defendants"), a restaurant located in Santa Rosa, California.  Dkt. No. 1.  Plaintiffs, who are disabled and use wheelchairs for mobility while in public, allege that they encountered several physical barriers in accessing the restaurant on four separate visits.  First Am. Compl. ("FAC") at  ¶¶ 2, 14-15, Dkt. No. 19.

On the basis of these barriers, Plaintiffs assert a claim under the federal Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., as well as state-law claims under the Disabled Persons Act ("DPA"), Cal. Civ. Code §§ 51, 54.1 and 54.3; Cal. Health and Safety Code § 19955, et seq.; and the Unruh Civil Rights Act, Cal. Civil Code § 52, et seq.  FAC ¶¶ 40-78.  Plaintiffs' ADA and Health and Safety Code claims seek injunctive relief and attorney's fees and costs, while their remaining state-law claims seek statutory damages in addition to those forms of relief.  *Id.* ¶¶ 29-31. The DPA and Unruh Civil Rights Act make violations of the federal ADA actionable under state law, thus Plaintiffs base their state law claims in part on the alleged violation of the ADA.  *Id.* ¶¶ 52-62, 71-78.  Plaintiffs, who jointly visited the restaurant four times, have limited their damages to

UNITED STATES DISTRICT COURT
For the Northern District of California

1 the statutory minimum damages of $4,000 per occasion of discrimination.  Dkt. No. 33-7.

2 On May 9, 2013, Plaintiffs filed a motion for summary judgment as to the fourth cause of

3 action, violation of the Unruh Civil Rights Act.  Dkt. No. 33.  Plaintiffs assert they are entitled to

4 statutory damages for each of the four visits to the Café.  In their Opposition, filed May 23, 2013,

5 Defendants contend that there is a material issue of fact as to whether Plaintiffs personally

6 encountered the claimed difficulties during their visits because Plaintiffs are "predatory" disability

7 litigants, and their claims therefore lack credibility.  Dkt. No. 36.  Defendants also contend that

8 California Civil Code section 55.56, which governs the award of statutory damages under the Unruh

9 Act, bars Plaintiffs from recovering "stacked" damages for their four consecutive visits to the Café

10 over a three-month period, because Plaintiffs failed to mitigate their damages.  *Id.*

11 Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court

12 found this matter suitable for disposition without oral argument and vacated the hearing.  Dkt. No.

13 42.  Having considered the parties' papers, relevant legal authority, and the record in this case, the

14 Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion for the reasons set forth below.

15 **BACKGROUND**

16 Unless otherwise indicated, the following facts are taken from the parties' Joint Statement of

17 Undisputed Facts ("JSUF").  Dkt. No. 38.  Sam's for Play Café is a public accommodation as

18 defined under the ADA.  JSUF ¶ 5.  Sam's for Play Café is located at 1024 Sebastopol Avenue, in

19 Santa Rosa, California.  *Id.* ¶ 6.  Darleen Sam Anker, trustee of the D. Sam Anker Trust, dated

20 March 14, 2008, is the owner of the property where Sam's for Play Café is located and has owned

21 the property since 1985.  *Id.* ¶ 1.  S&T Anker, Inc., dba Sam's for Play Café is the operator of Sam's

22 for Play Café.  *Id.* ¶ 2.

23 Irma Ramirez is a person with a disability as defined under the ADA.  *Id.* ¶ 3.  Ramirez uses

24 a wheelchair for primary mobility, but she can take some steps with Canadian crutches.  Ramirez

25 Decl. ¶ 8, Dkt. No. 33-3.  She relies on her power wheelchair for mobility in public.  *Id.*  She did not

26 use a power wheelchair prior to September of 2008.  *Id.* ¶ 14.  Ramirez was last employed in 1993.

27 JSUF ¶ 38.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

2

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Daren Heatherly is also a person with a disability as defined under the ADA. *Id.* ¶ 4. He can

2    stand, and take one or two steps, but not well. Heatherly Decl. ¶ 6, Dkt. 33-2. He relies on his

3    power wheelchair for mobility. *Id.* Heatherly retired in 1989. JSUF ¶ 39.

4    Ramirez has been going to Sam's for Play Café since about 1998. *Id.* ¶ 40. At that time, she

5    encountered difficulties entering the restaurant because of the weight of the door, as well as

6    difficulty with the limited space between the dining chairs and the bar stools at the breakfast bar. *Id.*

7    ¶¶ 41, 42. She told no one about these problems. *Id.* ¶ 43. Ramirez and Heatherly continued to eat

8    at Sam's for Play Café about eight times per year from 1998 through 2011, usually on Wednesdays.[1]

9    *Id.* ¶¶ 45, 46. Ramirez also recommends the Café to her disabled friends "because it is a good place

10   to eat." *Id.* ¶ 47.

11   Plaintiffs both went to Sam's for Play Café on the following dates: June 19, 2008; June 23,

12   2008; Jul 22, 2008; October 30, 2010; November 3, 2010; November 26, 2010; and February 3,

13   2011. *Id.* ¶¶ 7, 48. It is undisputed that from October 29, 2010 through February 11, 2011, the Café

14   did not have current ADAAG compliant van accessible parking with a level access aisle, or tow

15   away signage, although there was a marked disabled parking stall. *Id.* ¶¶ 10-15. Accordingly, on

16   these visits, Plaintiffs encountered the non-compliant parking lot. *Id.* ¶ 33. Defendants have since

17   provided a van-accessible, level parking stall with an access aisle and ADAAG compliant signage.

18   *Id.* ¶¶ 10-15. During the same time period, Sam's for Play Café did not have current ADAAG

19   compliant outdoor or indoor seating. *Id.* ¶¶ 8, 9. As a result, Defendants removed a bench from an

20   outdoor table in order to provide compliant outdoor seating, and provided an ADAAG compliant

21   designated accessible indoor table. *Id.*

22   From October 29, 2010 through February 11, 2011, Sam's for Play Café did not have an

23   ADAAG compliant entrance, which Defendants remedied by lowering the door pressure and

24   installing kick plates. *Id.* ¶ 16. During this period, the restrooms were also not ADAAG compliant.

25

26   [1] The JSUF states that Plaintiffs patronized the Café eight times per year from 1998 through

27   2011, but Ramirez's Declaration states that she stopped going in 2008, and did not return until
     October 3, 2010. Dkt. No. 33-3 ¶ 14. This amounts to approximately 88 visits.

28

1    *Id.* ¶¶ 17, 25.  The defects common to both restrooms were as follows:  (1) the doorway was too

2    narrow at 28" rather than the requisite 32"; (2) the flush control valve was on wrong side of tank; (3)

3    the rear grab bars were too short at 24" rather than the requisite 36"; (4) the "p"-traps were not

4    insulated; (5) the lavatories were 3.5-4 inches too low to allow for seated knee clearance; and (6) the

5    paper towel dispensers were mounted too high at 56" rather than 40".  *Id.* ¶¶ 18-24, 26-31.

6    Additionally, the women's restroom mirror was mounted too high at 44" rather than 40", while the

7    men's restroom toilet seat cover dispenser was mounted out of reach over the water closet.[2]  *Id.* ¶¶

8    23, 32.  As a result, Defendants changed both restrooms to unisex restrooms, and designated one as a

9    unisex accessible restroom.  *Id.* ¶ 17.

10          From July 26, 1990 to March 22, 2011, no one acting on behalf of Sam's for Play Café

11   identified any architectural barriers at the restaurant, nor was there any designated disabled parking

12   prior to 2000.  *Id.* ¶¶ 34, 35.  Ramirez never verbally complained about any problems she or

13   Heatherly encountered during their multiple return visits to the restaurant.  *Id.* ¶ 44.  Repairs to

14   Sam's for Play Café began on June 18, 2011, and were completed on July 12, 2011.  *Id.* ¶ 56.  The

15   Café could afford to remove the architectural barriers to make the restaurant ADAAG compliant.  *Id.*

16   ¶ 36.

17          Both Plaintiffs filed declarations in which they detailed the difficulties they personally

18   experienced due to the architectural barriers identified in the JSUF.  Dkt. Nos. 33-2 and 33-3.

19   Defendants dispute the veracity of these claims because Plaintiffs appear to derive their income from

20   "predatory" disability litigation.  Opp. at 2-3.

21          Ramirez complained of difficulty getting through the narrow restroom doorway during all of

22   her 2008 and 2010-2011 visits.  Dkt. No. 33-3 ¶¶ 11, 15.  However, in the 2010 letter, Ramirez

23   states she wrote to Defendants, which was incorporated into her declaration, Ramirez stated, "2

24   years ago I didn't have a power chair.  I could get into the women's restroom.  Now it's really hard

25   because the door is too narrow.*"  Id.* ¶ 14.  Ramirez states that she had "worry and anxiety" because

26

27          [2] Although omitted from the JSUF, Plaintiffs' accessibility expert, Rick Sarantschin,
28   identified the same defect in the women's restroom.  Sarantschin Decl. at 3:12-15, Dkt. No. 33-1.

4

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   she feared that her van's access ramp could be blocked by another vehicle, though this did not

2   happen during any of the specific visits alleged in this lawsuit. *Id.* ¶ 13. Ramirez also had

3   "difficulty transferring to the water closet because the grab bar was too short, making it difficult for

4   [her] to balance and leverage [herself]. *Id.* ¶ 15. She stated she could not reach the toilet seat cover

5   dispenser because it was too high, and it was "difficult" to use the sink because she had to stretch to

6   reach the controls and sit sideways. *Id.*

7          Heatherly complained of the same difficulties. Dkt. No. 33-2, ¶¶ 8, 10. Heatherly stated that

8   the restroom door was too narrow, "making it difficult for [him] to enter as [he] might hit [his] hands

9   or wheel chair." *Id.* ¶ 12. The rear grab bar was too short, making it difficult for him to transfer to

10  the water closet, he had to "stress and strain" to reach the toilet seat covers, and the sink was

11  mounted too low, so he had to sit sideways when he used it, and he got water on his clothes. *Id.*

12         Ramirez asserts she sent two letters about the access problems she encountered to "the

13  landlord and tenant" of Sam's for Play Café, on September 5, 2008 and December 15, 2010.

14  Ramirez Decl. ¶¶ 12, 14. The 2008 letter identified only the parking space and narrow restroom

15  doorway as problems, and did not identify any specific concerns with the weight of the door, the

16  breakfast bar access, or the restroom facilities. *Id.* ¶ 13; Ramirez Decl., Ex. A, Dkt. No. 33-4. The

17  letter demanded assurance within two weeks that the Café would take care of the accessibility

18  complaints, as well as a written agreement that the work would be done "within the next three

19  months." *Id.* ¶ 12. Yet despite claiming Sam's was a place she regularly enjoyed, Ramirez never

20  followed up on this letter, verbally or in writing, and stopped eating there for the next two years.

21  JSUF ¶ 44; Ramirez Decl. ¶ 14.

22         Plaintiffs returned to the Café in 2010 and found that the architectural barriers still existed.

23  Ramirez Decl. ¶ 13. Despite this, and although Plaintiffs would typically visit the Café just eight

24  times per year, they decided to eat at the Café three times in less than 30 days, without complaining

25  of the barriers to anyone. *Id.* ¶¶ 13, 14. Ramirez asserts that after the three visits, she wrote another

26  letter regarding accessibility in December of 2010, but did nothing to follow up on it. *Id.* ¶14.

27  Defendant Darleen Sam Anker testified that she never received either of the letters and that she had

28

5

UNITED STATES DISTRICT COURT
For the Northern District of California

1  no knowledge of Plaintiffs' complaints.  Khoury Decl., Ex. A (Anker Depo.) at 9:5-16, 11:22-12:2,

2  Dkt. 33-6.

3  　　　The following facts are undisputed, but Plaintiffs object to their inclusion on the grounds that

4  they are not relevant for the purposes of summary judgment.  JSUF at 10:8-10.

5  　　　On June 15, 2004, Ramirez filed her first lawsuit in the Northern District of California.  *Id.* ¶

6  57.  Since that date, Ramirez and Heatherly have filed 69 lawsuits in the Northern District of

7  California.[3]  *Id.* ¶ 58.  Thirty-two of those lawsuits were filed against businesses in Sonoma County,

8  California, where Sam's for Play is located.  *Id.* ¶ 59.  On March 22, 2011, Plaintiffs filed a total of

9  five lawsuits against five separate restaurants, including Sam's for Play Café, all with locations on

10  Sebastopol Road, in Santa Rosa.  *Id.* ¶ 60.  One lawsuit was filed against Perry's Deli across the

11  street from Sam's for Play Café.  *Id.* ¶ 55.

12  　　　Beginning February 11, 2011, Plaintiffs filed 31 lawsuits against businesses in San

13  Francisco, California.  *Id.* ¶ 61.  From February 11, 2011 to October 7, 2011, Plaintiffs filed nine

14  lawsuits against businesses all located on 24th Street in San Francisco.  *Id.* ¶ 62.  There are 24

15  occasions in 2011 and 2012 where Plaintiffs visited multiple restaurants in a given day.  *Id.* ¶ 52.

16  Plaintiffs state they have visited as many as five restaurants in a day, "for the purposes of food and

17  beverage."  *Id.* ¶¶ 49, 50.  For instance, on January 24, 2012, Ramirez and Heatherly visited five

18  restaurants in San Francisco for "purposes of food and beverage."  *Id.* ¶ 51.  They have no friends or

19  relatives in San Francisco and go there to visit places like Golden Gate Park and the marina.  *Id.* ¶¶

20  53, 54.

21  　　　On February 22, 2011, Plaintiffs filed a complaint against three businesses all with locations

22  in San Mateo County, California.  *Id.* ¶ 63.  On November 2 and 13, 2012, Plaintiffs filed a

23  complaint against three businesses all with locations in San Rafael County, California.  *Id.* ¶ 64.

24  　　　Plaintiffs filed the present case on March 22, 2011, and filed their FAC on August 21, 2012.

25

26  　　　[3] Defendants request that the Court take judicial notice of each of the 69 other disability
27  access lawsuits filed by Plaintiffs since 2004.  Dkt. No. 37.  Plaintiffs do not oppose the request.
28  Accordingly, pursuant to Federal Rule of Evidence 201(d), the Court GRANTS Defendants' request.

1  Dkt. Nos. 1, 19. Plaintiffs filed the present Motion for Summary Judgment on May 9, 2013, as to

2  their fourth cause of action, violation of the Unruh Civil Rights Act. Dkt. No. 33. Defendants filed

3  an Opposition on May 23, 2013 (Dkt. No. 36), and Plaintiffs filed a Reply on May 30, 2013 (Dkt.

4  No. 39).

5                                    **LEGAL STANDARD**

6          Summary judgment is appropriate only when there is no genuine dispute of material fact and

7  the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v.*

8  *Catrett*, 477 U.S. 317, 322 (1986). The moving party bears both the initial burden of production as

9  well as the ultimate burden of persuasion to demonstrate that no genuine dispute of material fact

10 remains. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir.

11 2000). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for

12 the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

13         Once the moving party meets its initial burden, the nonmoving party is required "to go

14 beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories,

15 and admissions on file, designate specific facts showing that there is a genuine issue for trial."

16 *Celotex Corp.*, 477 U.S. at 324 (internal quotations and citations omitted). The non-moving party

17 may not rely on the pleadings alone, but must present specific facts creating a genuine issue of

18 material fact through affidavits, depositions, or answers to interrogatories. Fed. R. Civ. P. 56(c);

19 *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

20         The Court must view the evidence in the light most favorable to the nonmoving party.

21 *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If a reasonable

22 jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate.

23 *Anderson*, 477 U.S. at 248. However, unsupported conjecture or conclusory statements are

24 insufficient to defeat summary judgment. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th

25 Cir. 2008). Moreover, the court is not required "to scour the record in search of a genuine issue of

26 triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citations omitted), but rather

27 "may limit its review to the documents submitted for purposes of summary judgment and those parts

28

UNITED STATES DISTRICT COURT
For the Northern District of California

7

UNITED STATES DISTRICT COURT
For the Northern District of California

1    of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d

2    1026, 1030 (9th Cir. 2001).

3                                          **ANALYSIS**

4    **A.      Evidence of Other Lawsuits Filed by Plaintiffs**

5           Plaintiffs object to the inclusion of the undisputed facts regarding other disability lawsuits on

6    the grounds that they are not relevant for purposes of deciding the instant motion for summary

7    judgment.  Defendants counter that these 69 additional lawsuits establish a pattern of abusive or

8    predatory litigation in which Plaintiffs intentionally maximize, or "stack" statutory damages by

9    paying multiple visits to non-compliant businesses before they could reasonably expect the alleged

10   barriers to be removed.  Thus, Defendants argue that the inclusion of these lawsuits is relevant to

11   Plaintiffs' credibility in relation to their reasons for repeatedly visiting businesses at which they

12   encountered barriers.

13          The Court has reviewed Plaintiffs' other lawsuits and notes that Plaintiffs often allege that

14   they returned to a business numerous times within a short period of time before filing suit.[4]  These

15   visits are made shortly after Plaintiffs demand modifications, but before Plaintiffs could reasonably

16   expect such modifications would be made.  *See, e.g.*, Ramirez Decl. ¶ 12, in which Ramirez states

17   that she believes three months is a reasonable amount of time in which to expect removal of

18   architectural barriers.  In this case, evidence of Plaintiffs' prior behavior is relevant because the only

19   issue to be resolved is that of entitlement to "stacked" damages for multiple visits in light of

20   Plaintiffs' duty to mitigate their damages.  Federal Rule of Evidence 404(b) provides that

21   "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to

22   show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid.

23

24          [4] *See, e.g., Irma Ramirez and Daren Heatherly v. T2J Thai Restaurant LLC,*
     3:12-cv-00476-NC, Dkt. No. 1, in which Plaintiffs allege that they visited a Thai restaurant but
25   could not access the bathrooms because they were down a flight of stairs.  Plaintiffs wrote to request
     accommodations and, when they did not receive a response, drove from Santa Rosa to San Francisco
26   to visit the restaurant four times in 35 days, despite knowing that they could not access the
27   bathrooms.  Plaintiffs then filed suit, seeking statutory damages under the Unruh Act for each of the
     four visits.
28

                                                8

1   404(b)(1).  Such evidence is nonetheless admissible for other purposes, "such as proof of motive,

2   opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ."

3   *Id.*  To admit evidence of prior acts, it must: (1) tend to prove a material point in issue; (2) not be too

4   remote in time; (3) be proven with evidence sufficient to show the act was committed; and (4) if

5   admitted to prove intent, must be similar to the offense charged.  *United States v. Beckman*, 298 F.3d

6   788, 794 (9th Cir. 2002).  If evidence satisfies Rule 404(b), "the court must then decide whether the

7   probative value is substantially outweighed by the prejudicial impact under Rule 403."  *United*

8   *States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002).  In analyzing whether to the admit Rule 404(b)

9   evidence, the Court is mindful that the rule is "a rule of inclusion–not exclusion."  *United States v.*

10  *Cherer*, 513 F.3d 1150, 1157 (9th Cir. 2008).

11          As a general matter, prior lawsuits are inadmissible to show that the plaintiff is litigious.  *See*

12  *Henderson v. Peterson*, 2011 WL 2838169, at *6 (N.D. Cal. July 15, 2011) ("evidence of Plaintiff's

13  litigiousness is inadmissible character evidence.").  Nonetheless, such evidence is admissible other

14  purposes.  *United States v. Gay*, 967 F.2d 322, 328 (9th Cir. 1992) (noting that "[Rule 404(b) ] does

15  not proscribe the use of other act evidence as an impeachment tool during cross-examination.").

16  Here, Plaintiffs' filing of at least 69 disability lawsuits is admissible to challenge the credibility of

17  their damages claims.  *See Otto v. Commerce St. Capital*, 2013 WL 2357623, at *2 (E.D. Pa. May

18  29, 2013) (finding that evidence of plaintiffs' prior lawsuits, which made "nearly identical damage

19  claims," was admissible to challenge credibility); *Tomaino v. O'Brien*, 315 F.App'x 359, 361 (2d

20  Cir. 2009) (upholding admission of evidence concerning plaintiff's five prior lawsuits on the ground

21  that a jury could infer that plaintiff had made "strikingly similar claims [and] that his testimony in

22  support of a sixth such suit was not credible.").  Accordingly, the Court shall permit inclusion of the

23  undisputed facts regarding other disability lawsuits.

24  **B.      Unruh Civil Rights Act**

25          In their Motion, Plaintiffs argue that they are entitled to summary judgment on their Unruh

26  Act claim because it is undisputed that they are each a person with a disability under the ADA,

27  Sam's For Play Café is a place of public accommodation under the ADA, architectural barriers exist

28

9

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  at the Café that denied Plaintiffs full and equal access, and removal of the barriers was readily

2  achievable.

3      The Unruh Act broadly outlaws arbitrary discrimination in public accommodations,

4  including discrimination based on disability. *Jankey v. Sung Koo Lee*, 55 Cal. 4th 1038, 1044

5  (2012); Cal. Civ. Code § 51(b). Any violation of the ADA necessarily constitutes a violation of the

6  Unruh Act. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007) (citing Cal. Civ. Code §

7  51(f)).

8      The ADA was enacted "to provide clear, strong, consistent, enforceable standards addressing

9  discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). "Its passage was

10 premised on Congress's finding that discrimination against the disabled is 'most often the product,

11 not of invidious animus, but rather of thoughtlessness and indifference,' of 'benign neglect,' and of

12 'apathetic attitudes rather than affirmative animus.'" *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d

13 939, 944-45 (9th Cir. 2011) (en banc) (quoting *Alexander v. Choate*, 469 U.S. 287, 295-96 (1985)).

14 Under the ADA, unlawful "discrimination" occurs when features of an accommodation

15      subject an individual or class of individuals on the basis of a disability or disabilities
        of such individual or class, directly, or through contractual, licensing, or other
16      arrangements, to a denial of the opportunity of the individual or class to participate in
        or benefit from the goods, services, facilities, privileges, advantages, or
17      accommodations of an entity.

18 42 U.S.C. § 12182(b)(1)(A)(i). In the context of existing facilities, discrimination includes "a failure

19 to remove architectural barriers . . . where such removal is readily achievable." *Id.* §

20 12182(b)(2)(A)(iv).

21     To prevail on a discrimination claim, a plaintiff must show that: (1) he or she is disabled

22 within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a

23 place of public accommodation; and (3) the plaintiff was denied public accommodations by the

24 defendant because of his or her disability. *Molski*, 481 F.3d at 730; 42 U.S.C. § 12182(a)-(b). Here,

25 Defendants concede that the first two elements are satisfied. JSUF ¶¶ 1-2, 5. Thus, the Court's

26 analysis focuses on the third element.

27     Where the basis of liability for an Unruh Act violation is an ADA violation, a plaintiff need

28

10

1  not prove intentional discrimination.  *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 678 (2009).  The

2  Unruh Act allows for monetary damages including automatic minimum penalties in the amount of

3  $4,000 per occurrence, and attorney's fees as "may be determined by the court."  Cal. Civ. Code §

4  52.  Proof of actual damages is not required to recover statutory minimum damages under the Unruh

5  Act.  *See, e.g., Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000).

6  　　　　Under the Construction Related Accessibility Standards Compliance Act ("CRAS"), which

7  became effective in 2008, a plaintiff alleging a violation of either the Unruh Act or the DPA may

8  recover statutory damages only if the violation denied him or her "full and equal access to the place

9  of public accommodation on a particular occasion."  Cal. Civ. Code § 55.56(a).  Section 55.56 is

10  part of a comprehensive statutory scheme that was enacted to increase voluntary compliance with

11  equal access standards "while protecting businesses from abusive access litigation."  *Munson*, 46

12  Cal.4th at 677; *see* Cal. Civ. Code §§ 55.3-55.57.  The provisions in sections 55.51 through 55.57

13  apply only to a "construction-related accessibility claim," which is defined as a violation of a

14  "construction-related accessibility standard" under federal or state law.  Cal. Civ. Code §§ 55.51,

15  55.52 (a)(1), (6).

16  A plaintiff is denied full and equal access either by personally encountering the violation or

17  being deterred thereby from accessing the location.  *Id.* § 55.56 (b).  "A violation personally

18  encountered by a plaintiff may be sufficient to cause a denial of full and equal access if the plaintiff

19  experienced difficulty, discomfort, or embarrassment because of the violation."  *Id.* § 55.56 (c).

20  "Statutory damages may be assessed pursuant to subdivision (a) based on each particular occasion

21  that the plaintiff was denied full and equal access."  *Id.* § 55.56 (e).

22  　　　　1.　　　Statutory Interpretation of Cal. Civil Code § 55.56(c)

23  As a threshold matter, Defendants contend that the Court should not give the word

24  "difficulty" a literal meaning and should instead require proof that the "difficulty discomfort or

25  embarrassment" be "tortuous" to be actionable under section 55.56(c).  Opp. at 13:15-18, 14:13-21.

26  "It is a well-established cannon of statutory construction that a court should go beyond the literal

27  language of a statute if reliance on that language would defeat the plain purpose of the statute."  *Bob*

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  *Jones University v. United States*, 461 U.S. 574, 586 (1983).

2         Here, the Court finds that reliance on the language of section 55.56 does not defeat the

3  purpose of the statute.  The purpose of the CRAS is to protect "businesses from abusive access

4  litigation" and "impose limitations on damages" by requiring that a claimant prove that he or she

5  personally suffered physical or emotional harm from encountering the alleged access violations.

6  *Munson*, 46 Cal.4th at 666.  Thus, the statute seeks to curb abuse by denying recovery for technical

7  access violations that do not personally deprive a plaintiff of full and equal access.  *Thomas Mundy*

8  *v. Pro-Thro Enter.*, 192 Cal. App. 4th Supp. 1, 5 (2011).  Defendants' argument that the Court must

9  require proof that the discomfort is tortuous goes against this case law.  *See Mundy*, 192 Cal. App.

10  4th Supp. 1 at 5 (finding that appellant need only show that he experienced difficulty, discomfort, or

11  embarrassment as a result of personally encountering an ADA violation).  Thus, the Court is not

12  persuaded by Defendants' argument that the literal meaning of these words is insufficient to

13  effectuate the purpose of the statute.

14         2.      The Credibility of Plaintiffs' Evidence of Difficulty, Discomfort, or Embarrassment

15         Defendants argue that Plaintiffs' Declarations regarding the difficulty and discomfort they

16  encountered at Sam's for Play Café are not credible because the testimony is uncorroborated and

17  self-serving.  Opp. at 12-13.  However, subjective credibility judgments such as these do not raise a

18  genuine issue of material fact.  *Schuler v. Chronicle Broad. Co., Inc.*, 793 F.2d 1010, 1011 (9th Cir.

19  1986).  "Neither a desire to cross-examine an affiant nor an unspecified hope of undermining his or

20  her credibility suffices to avert summary judgment" absent a specific, factual basis for disregarding

21  the affidavit.  *Nat'l Fire Ins. Co. v. Argonauts Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983).

22         The Court finds Plaintiffs have provided credible evidence that they personally encountered

23  a denial of full and equal access due to existing architectural barriers at Sam's for Play Café on

24  October 30, 2010, November 3, 2010, November 26, 2010, and February 3, 2011.  As stated above,

25  it is undisputed that Plaintiffs visited the Café on these four dates and that the Café did not have

26  compliant accessible parking or restrooms.  Both Plaintiffs have declared, under penalty of perjury,

27  that they experienced difficulty entering the restrooms, transferring to the toilets, accessing a toilet

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  seat cover, and using the sink.  Ramirez Decl. ¶ 15; Heatherly Decl. ¶¶ 8, 12.  They were also

2  concerned that access to their van could be blocked due to the non-compliant parking stall.  Ramirez

3  Decl. ¶ 13; Heatherly Decl. ¶ 10.  There is no evidence contradicting Plaintiffs' evidence that they

4  personally encountered these barriers and suffered difficulty and discomfort as a result.

5       Regarding Defendants' "predatory" disability litigants argument, the Court also declines to

6  make a credibility determination based solely on the fact that Plaintiffs have filed numerous similar

7  cases, absent evidence that such claims were fraudulent or otherwise made in bad faith.  *See*

8  *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1168 (2010) (urging caution in making

9  "credibility determinations that rely on a plaintiff's past [Disabilities Act] litigation").  This is

10  especially so where, as here, it is undisputed that Plaintiffs have been regular customers of the Café

11  for over a decade.  JSUF ¶ 40.

12       Based on this analysis, the Court finds that summary judgment is appropriate as to Plaintiffs'

13  Unruh Act claim.  Plaintiffs have established that they are disabled within the meaning of the ADA,

14  the Café is a place of public accommodation, and Plaintiffs were denied public accommodations

15  because of their disabilities.  Accordingly, the Court GRANTS summary judgment as to the Fourth

16  Cause of Action.  However, the Court must determine whether Plaintiffs are entitled to statutory

17  damages for each visit in light of their duty to mitigate damages.

18       3.     Mitigation of Damages

19       The remaining issue is whether statutory damages are mandatory or permissive.  Plaintiffs

20  seek statutory damages for each of their four visits - October 30, 2010, November 3, 2010,

21  November 26, 2010, and February 11, 2011.  Section 55.56(e) contemplates multiple damages

22  awards: "[s]tatutory damages may be assessed pursuant to subdivision (a) based on each particular

23  occasion that the plaintiff was denied full and equal access."  However, this subdivision did not alter

24  the legal obligation of a party to mitigate damages.  *See* Cal. Civil Code § 55.56(g).[5]

25

26       [5] In 2012, the California Legislature added section 55.56(h), which states: "In assessing
liability under subdivision (d), in any action alleging multiple claims for the same construction-

27  related accessibility violation on different particular occasions, the court shall consider the

28  reasonableness of the plaintiff's conduct in light of the plaintiff's obligation, if any, to mitigate

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Ramirez asserts she sent two letters about the access problems she encountered to Sam's for

2    Play Café.  Ramirez Decl. ¶¶ 12, 14.  In her September 2008 letter, Ramirez demanded assurance

3    within two weeks that the Café would take care of the accessibility complaints, as well as a written

4    agreement that the work would be done "within the next three months."  Ramirez Decl., Ex. A.

5    Ramirez never followed up on this letter and stopped eating there for the next two years.  JSUF ¶ 44;

6    Ramirez Decl. ¶ 14.  Plaintiffs returned to the Café in 2010, and found that the architectural barriers

7    still existed.  Ramirez Decl. ¶ 13.  Although Plaintiffs would typically visit the Café just eight times

8    per year, they decided to eat there three times in less than 30 days, without complaining of the

9    barriers to anyone.  *Id.* ¶¶ 13, 14.  Ramirez asserts that after the three visits, she wrote another letter

10   regarding accessibility in December of 2010.  *Id.* ¶14.  It is unclear why Ramirez would state as

11   early as 2008 that she believed three months would be a reasonable amount of time in which to

12   remedy the barrier issues at the Café, yet Plaintiffs then chose to visit the Café three times in thirty

13   days, despite their knowledge that they would experience the same worry and anxiety about their

14   van, and numerous difficulties entering and using the restroom.

15          Further, there is a factual dispute as to whether Plaintiffs actually sent the letters.  Anker

16   Depo. at 9:5-16, 11:22-12:2.  However, even if the Court were to credit Ramirez's statement that she

17   sent them, there is still the issue of her knowledge as to whether it was unreasonable to expect that

18   the barriers would have been removed when Plaintiffs visited the Café three times within 30 days.

19   The fact that Plaintiffs were regular patrons of the Café does not absolve them of the duty to mitigate

20   damages.

21          Plaintiffs rely on *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837 (9th Cir. 2004), in

22   support of the proposition that they are entitled to statutory damages for each visit to the Café.

23   However, *Lentini* is inapposite, as it was decided prior to the enactment of Civil Code section 55.56,

24   which governs the grounds for awards of statutory damages under the Unruh Act and DPA.  *Lentini*

25

26   damages."  This section is not retroactive, and therefore does not affect Plaintiffs' present complaint,
     which was filed before the effective date.  However, it provides support for Defendants' assertion
27   that Plaintiffs had a duty to mitigate by not stacking multiple visits where there was no reason to
     believe that modifications would be made.  *See* Section 25 of Stats.2012, c. 383 (S.B. 1186).
28

14

UNITED STATES DISTRICT COURT
For the Northern District of California

1    is also factually different from this case. In *Lentini*, the court awarded multiple damages for each

2    separate violation of the Unruh Act where the plaintiff proved she was deterred from attending seven

3    theater performances because management refused to admit her service dog. *Id.* at 842-43. The

4    duty to mitigate damages was not at issue. In contrast, this case turns on whether Plaintiffs are

5    entitled to multiple damages without a showing that they mitigated their damages. Thus, the Court

6    finds that *Lentini* does not mandate the award of statutory damages for each visit to the Café.

7        Based on this analysis, the Court finds that there is an issue of fact as to whether Plaintiffs

8    mitigated their damages after the October 30, 2010 visit to Sam's for Play Café. Accordingly, the

9    Court DENIES Plaintiffs' Motion as to the issue of multiple statutory damages.

10                                    **CONCLUSION**

11       For the foregoing reasons, Plaintiffs' Motion for Summary Judgment as to the Fourth Cause

12   of Action under the Unruh Act is GRANTED IN PART and DENIED IN PART. Plaintiffs are

13   entitled to an award of statutory damages pursuant to California Civil Code section 55.56(c) and (e)

14   for the October 30, 2010 visit. However, there is a triable issue of material fact as to whether

15   Plaintiffs are entitled to statutory damages for each of the three remaining visits.

16       **IT IS SO ORDERED.**

17

18   Dated: August 15, 2013                    _____

19                                             Maria-Elena James
                                               United States Magistrate Judge

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

15